John C. LEAHY, Jr., Appellant

v.

DISTRICT OF COLUMBIA.

No. 87–7012.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 5, 1987.

Decided Dec. 1, 1987.

Neal Goldfarb, with whom Arthur Spitzer and Elizabeth Symonds, Washington, D.C., were on brief, for appellant.

Susan S. McDonald, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellee.

Before RUTH BADER GINSBURG and STARR, Circuit Judges, and GESELL,* District Judge.

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

This case presents a first amendment free exercise clause challenge to the District of Columbia's requirement that applicants for driver's licenses provide the District with their Social Security numbers. The district court, based on a misreading of recent Supreme Court precedent, dismissed the case. *Leahy v. District of Columbia,* 646 F.Supp. 1372 (D.D.C.1986). We correct that misreading; restate the currently applicable free exercise doctrine; reverse the district court's judgment and remand the case for further proceedings consistent with this opinion including, as a threshold matter, determination on a more complete record of the sincerity of plaintiff's belief.

I.

In April 1983, plaintiff John C. Leahy, Jr., then a resident of the District of Columbia, applied for a District of Columbia driver's license. The municipal regulations of the District specify that each driver's license application shall state the applicant's social security number. *See* D.C. Mun.Regs. tit. 18, § 103.2 (1981).[1] Asserting religious objections to the requirement, Leahy refused to supply his social security number; as alternate means of identification, Leahy presented his passport and birth certificate. The licensing examination supervisor did not accept these substitutes. Leahy was not permitted to take the license examination and was not issued a driver's license.

Shortly thereafter, on April 7, 1983, Leahy wrote to Marion Barry, Mayor of the District of Columbia, requesting that Leahy's application for a driver's license be processed notwithstanding his refusal to provide his social security number. Mayor Barry forwarded Leahy's letter to Thomas Downs, Director of the District of Columbia Department of Transportation. Director Downs, in a May 6, 1983 response to Leahy, denied the request.

Leahy subsequently commenced a civil action against the District of Columbia in federal district court alleging violations of the first amendment and 42 U.S.C. § 1983 (1982); Leahy's complaint sought declaratory and injunctive relief as well as money damages.[2] After limited discovery, Leahy moved for summary judgment. The district court denied the motion and dismissed the case *sua sponte,* effectively granting summary judgment for the District. Opinion and Order, *Leahy v. District of Columbia,* 646 F.Supp. 1372 (D.D.C.1986); *see* 10A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE & PROCEDURE § 2720, at 29–30 (2d ed. 1983) ("summary judgment may be rendered in favor of opposing party even though [that party] has made no formal cross-motion under Rule 56"). Leahy appealed the dismissal of the case and further contends that his motion for summary judgment should have been granted. We reverse the district court's dismissal order but do not overturn the denial of Leahy's motion for summary judgment.

Leahy obtained a social security number in the mid-1960's; he asserts that in approximately 1978 or 1979 he came to believe that "use of his social security number for any purpose not related to the administration of his social security account would endanger his chances of being chosen for life after death." Plaintiff's Statement of Material Facts Not in Dispute ¶ 8 (Plaintiff's Facts).[3] The theological

1. The section provides:

 Each application shall state the applicant's true and lawful name (which shall include the applicant's full and complete name, including any given middle name or names); the applicant's date of birth; sex; social security number; the residence address of the applicant; and a brief description of the applicant, including, but not necessarily limited to, the applicant's height, weight, color of eyes, and color of hair.

2. Leahy has since moved to Maryland and obtained, without provision of his social security number, a Maryland driver's license. Although this development makes his request for injunctive relief moot, his claim for damages survives.

3. There is some indication that Leahy now believes use of his social security number even for

roots of Leahy's asserted belief, *see Wisconsin v. Yoder*, 406 U.S. 205, 215–16, 92 S.Ct. 1526, 1533–34, 32 L.Ed.2d 15 (1972) (belief must be "religious" in nature to gain shelter under the free exercise clause), lie in the New Testament BOOK OF REVELATION which, in its thirteenth chapter, refers to two beasts. REVELATION prophesies that those who receive the mark of the second beast shall be condemned to eternal damnation. *See* BOOK OF REVELATION 14:9–11. This mark is characterized as a number required for buying and selling. *See id.* at 13:17; *see also Stevens v. Berger*, 428 F.Supp. 896 (E.D.N.Y.1977) (extensive discussion of the theological and historical origins of the "mark of the beast"). Leahy avers that "social security numbers have come to share many of the characteristics of the mark of the beast, and that social security numbers may therefore be the mark of the beast." Plaintiff's Facts ¶ 7. On that account, Leahy refused to provide his social security number when applying for a driver's license.

## II.

Assuming for purposes of its opinion that Leahy's belief was sincere, the district court proceeded to balance Leahy's interest in freely exercising his rights under the first amendment against the District's stated safety and efficiency interests in requiring social security numbers in applications for driver's licenses. Were it not for a

misreading of *Bowen v. Roy*, 476 U.S. 693, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986), the most relevant recent Supreme Court opinion, the district court would have adhered to the compelling state interest test enunciated in *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and reaffirmed in *Thomas v. Review Bd. of the Indiana Employment Sec. Div.*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), as it did in its Memorandum Opinion of July 3, 1984 denying the District of Columbia's motion to dismiss. There the district court correctly observed: "[A] burden on religious liberty may be justified ... by showing that it is the least restrictive means of achieving some compelling state interest; only those interests of the highest order can overcome legitimate claims to the free exercise of religion." *Leahy v. District of Columbia*, No. 83–2907, slip op. at 6 (D.D.C. July 3, 1984) (denying motion to dismiss). In that Memorandum Opinion the district court further indicated, once again correctly we believe, that the compelling state interest test—so far as lower courts can tell from High Court doctrinal statements—applies to driver's license requirements just as it applies to the requirements of government benefit programs. *Id.* at 6–7.[4]

 Apparently because of the fragmented character of the Supreme Court's disposition in *Roy*, the district court took that case to have limited the application of *Sherbert* and *Thomas* and to have an-

---

the administration of his social security account may endanger his immortal soul. *See* Deposition of John C. Leahy, Jr. at 25–27.

**4.** The District urges us not to spread the application of the compelling state interest test from the administration of benefits programs to requirements impinging upon religious liberty imposed in the course of administering public safety statutes, such as the driver's license regulation in question here. A public safety regime, the District maintains, should be assessed under a less rigorous standard, not one that calls for any significant inconvenience in accommodating the free exercise assertion. Nothing in current Supreme Court precedent warrants acceptance by a lower court of the proffered distinction between public safety and public benefit legislation for the purpose at hand. In its most recent pronouncement in this area, albeit in the

setting of a public benefits (unemployment compensation) scheme, the Supreme Court resoundingly rejected modification of the "strict scrutiny/compelling interest" test:

[O]nly those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion.

*Hobbie v. Unemployment Appeals Comm'n of Florida*, — U.S. —, 107 S.Ct. 1046, 1049–50, 94 L.Ed.2d 190 (1987) (quoting *Wisconsin v. Yoder*, 406 U.S. at 215, 92 S.Ct. at 1533). Because the Court has never indicated its readiness to adopt the distinction advanced by the District, we decline to consider the District's invitation to make new law in this area. As we understand the governing precedents, the proper test in both the public benefits and public safety areas remains the least restrictive means/compelling interest inquiry.

nounced a less rigorous standard of scrutiny ("reasonable means of promoting a legitimate public interest") under which Leahy's claim would fail. This standard, proposed by Chief Justice Burger in a portion of his *Roy* opinion joined by only two other Justices (Justices Powell and Rehnquist), 106 S.Ct. at 2149, 2153–58, was expressly rejected by five Justices. *See* 106 S.Ct. 2158–60 (Blackmun, J.), 2164–69 (O'Connor, J., joined by Brennan, J., and Marshall, J.), 2169 (White, J.).[5] As the Court restated with unmistakable clarity in *Hobbie v. Unemployment Appeals Comm'n of Florida*, —— U.S. ——, 107 S.Ct. 1046, 1049–50, 94 L.Ed.2d 190 (1987), the compelling state interest test of *Sherbert* and *Thomas* continues to define the Supreme Court's free exercise clause jurisprudence. Under that test, on the current record, the District of Columbia has failed to show that it is entitled to prevail; the District has not demonstrated that requiring a religious objector to provide his social security number in order to obtain a driver's license is the least restrictive means of achieving the concededly vital public safety objective at stake.[6]

In dismissing the case, the district court construed all relevant facts in a light most favorable to Leahy. For the purpose of summary disposition, the district court was unquestionably correct in assuming that Leahy's belief was sincerely held. However, because we have determined that dismissal of the complaint was improper as a matter of law, this case returns to its former posture—a motion by Leahy for summary judgment denied by the district court. Placed in that framework, the dispute between Leahy and the District over his sincerity is eminently material; the district court therefore cannot be faulted for refusing Leahy's application for immediate judgment in his favor. Accordingly, we remand this case to the district court for further proceedings to determine Leahy's sincerity and, if necessary thereafter, for a determination of any relief to which he may be entitled. *See supra* note 2. We remind the district court that, pursuant to Federal Rule of Civil Procedure 42(b), it may order a separate trial[7] on the limited question of sincerity if it deems this to be convenient or expedient.

*Reversed and remanded.*

---

**5.** Upon receiving the district court's opinion and realizing that the court had miscounted the adherents to the final portion of Chief Justice Burger's opinion in *Roy,* counsel should have alerted the district court, promptly, to the simple arithmetic error. Plaintiff's counsel indicated at oral argument that he received the opinion too late to return to the district court in view of the impending expiration of the time for filing a notice of appeal. The District of Columbia timely received the opinion and offers no explanation for its failure to inform the district court of the plain error that court had made. We admonish counsel, in instances such as this one, to be mindful constantly of their obligation of candor toward the court. *See* MODEL RULES OF PROFESSIONAL CONDUCT Rule 3.3(a)(3) (1983); MODEL CODE OF PROFESSIONAL RESPONSIBILITY DR 7–106(B)(1) (1980).

**6.** Leahy observed that accommodating his objection would not require the District to establish new procedures, for the city already had in place an alternate system of numbers, used for issuing diplomatic driver's licenses. Brief for Appellant at 10–11, 29–30.

**7.** Because neither party has demanded a jury trial as of right, the district court may try any or all issues in the manner that court finds most appropriate. *See* FED.R.CIV.P. 39(b).